Vickie Forby v. One Technologies, Clause 17-10883. Good morning. May it please the Court, Adam Pulver for Appellant Vickie Forby. The District Court correctly held that under this Court's decision on the merits standard, by filing a substantive motion to dismiss and waiting until the Court ruled before filing its motion to compel arbitration, One Technologies substantially invoked the judicial process. The District Court, though, committed several legal errors in its analysis of Ms. Forby's prejudice and how much she suffered by the fact that One Technologies made the strategic decision to delay for more than a year, I'm sorry, for approximately a year after the action was transferred to the Southern District of Texas to seek arbitration. Globally, the District Court's error was in considering prejudice as a question of dollars and cents rather than as a matter of inherent unfairness, as this Court has repeatedly instructed. In April 2016, it was certainly a strategic choice that One Technologies had before it. It certainly had the option of filing a motion to compel arbitration or moving to dismiss in the alternative. It chose not to. Instead, it filed a standalone 12B6 motion. In so doing, it sought to litigate the merits of the case. There is no question that this, putting aside whether there is a difficulty sometimes deciding between perfunctory motions to dismiss and other motions to dismiss, that this could not fairly be described as perfunctory. Under this Court's case law, this single overt act, seeking a judicial decision on the merits, is enough. Enough for? For the substantial invocation of the judicial process. Well, the District Court found that there was a substantial invocation of the judicial process. That's correct, Your Honor. All right. And so I'll move on to the prejudice prong. We assert that there were three main legal errors that the District Court made on the finding by its conclusion that there was insufficient prejudice. First, it held that it could not determine whether Ms. Forby suffered time and expense prejudice. Now, this is important, I think, because there is a dispute about whether this is a factual question or a legal question. But the District Court did explicitly say it could not reach a factual determination because there weren't any affidavits or more detailed evidence submitted. This Court has repeatedly said, though, however, that no such evidence is required to assess time and expense prejudice. This is, therefore, not reviewed under a clear error standard. If the Court had looked at the evidence and said, I've looked at this, it's not enough, that might be a different question. But that's not what the District Court did here. What about the other side saying, this was, sure, you spent time. I mean, everyone knows responding to motions is a significant expense. But that it was no expense you wouldn't have suffered in the arbitration because these same issues were going to come up anyway. Well, I think that that's not correct. One, there's, as we cited in our reply brief, there's no guarantee that you can file a dispositive motion in arbitration at all. Certainly, Rule 12b-6 is not a creature that exists in arbitration. The procedural rules are different. You were certainly going to brief at some point. I mean, to me, the key issue, and I think this helps you on the first prong, but the key issue in this case is whether the enrollment situation. So, I mean, that was all going to get briefed at some point. Absolutely, Your Honor. And it's going to have to be briefed again. Hadn't it been briefed in Illinois? It was to some extent. There was, so the motion in Illinois addressed some of the same issues. It did not address all of them. And I believe it's tab E in our excerpts points to the section of our brief where we highlight the brief below, highlighting the distinctions between the motions dismissed. Part of it was the primary focus of the brief in Illinois was the enforceability of the forum selection clause and whether there was a valid formation of a contract. So, the vast majority of that brief was spent on this clickability and whether there was a valid contract. And that's all that the district court there reached. But I think, Judge Costner, you're raising an important point, which is the fact of having to brief something twice, even if there's an overlap, is itself prejudicial. And in this court, in Petroleum Pipe, and more recently in Raju, has said, having to brief the same issue twice is itself prejudice and is both time to expense prejudice, but also substantive prejudice, which goes to the heart of the matter, as this two bites at the apple. So I think even if the court is inclined to minimize how much extra work that is, it then goes and increases the substantive prejudice. Right. I mean, the key issue in this case, it's not some heavy, fat case where there's going to be 80 depositions. I mean, it's really a legal question, was this website disclosing the enrollment process and the fees that were going to get charged down the road? And on that key issue, they tee it up in a 12B6. The district court says, at least at the pleading stage, I think there's enough to let this case go forward. And then you – so you're the defendant. You don't think the judge is loving your arguments. You go try arbitration. I mean, it seems to me – I mean, forget this thing of cost. I mean, it just seems to me that's a much more straightforward prejudice right there. I agree, Your Honor. And I think that by failing to acknowledge that, the district court made a legal error because it focused solely in the substantive prejudice discussion on, one, the loss of the unjust enrichment claim, and two, this issue that wasn't an exposure of legal strategy, but this court has repeatedly held that there are other forms of substantive actually determinative and dispositive. If the court believes that they were taking a second chance and, just as you said, didn't like this outcome from the court and are going to take their chances in arbitration because they think they might get a different view, that alone is prejudice. That the – and Myrand, I think the court also said it's – whether it's in a worse legal position. And I think this – it's harder – But isn't that always going to be the case? When you meet prong one because there's a merits decision you're asking the court to decide, and then you're only going arbitration because the defendant, the party, didn't win that. So wouldn't there then – prejudice would pretty much always follow under that view? I think often – and Petroleum Pipe and Myrand both acknowledge that there is an overlap between those two aspects, but there are several times where a party can take an overt act exhibiting a disinclination to litigate – to arbitrate where there wouldn't be. So, for example, in the Petroleum Pipe case, there actually was no ruling by the court at all, yet this court found that there was prejudice anyway, but the court hadn't even ruled. And there had been no motion even filed. So several times there are a number of cases where you can take that overt act, you can move to dismiss, and the court doesn't reach a decision, or you can take other overt acts exhibiting the disinclination to arbitrate, but there actually hasn't been a decision or any other kind of second bite at the apple. But if there is an adverse decision by the party who later invokes arbitration on a merits issue, your position would be there's always going to be prejudice in that case? I believe so, Your Honor. There will always be that second bite at the apple prejudice, and that's why the courts have consistently said that's almost dispositive on the issue of prejudice. I think, you know, there are the discussions about the sort of sliding scale that the role delay plays, and that the longer the delay is, it makes it easier for the court to find prejudice. And I think here there was that delayed period of almost a year, and I think that... And I just want to be sure, didn't they offer as a reason for the transfer to a Texas court that they wanted the opportunity to pursue arbitration? Didn't they offer that as a reason in Illinois for the transfer? So they said, that's why we want to go to Texas. That was the sole reason. And then when the court case was transferred here... They didn't mention that for a year. No. They asked for 30 days to evaluate the case in extension, which we did not oppose. Then they filed a standalone motion to dismiss. Just briefly, one thing I would like to add is that this is not a case about holding defendants to a tightrope, which is the term that one technologist has used. I think those cases about tightropes, those are all where a party has moved in the alternative to dismiss or to compel arbitration. And we would not be here if that was what had happened here. One technologist in 2016 said, we're going to move to compel arbitration district court, but if you think that we shouldn't, please address our 12B6 motion. But they didn't do that. And so there's no judicial tightrope here, because that's clear, that's been established in this court's case law, that that's how you proceed. Briefly, I just wanted to flag in our 28J letter, in the back and forth, we submitted the Hampton case decided by this court earlier this summer, which explained that one overt act, in that case it was a motion for summary judgment, is enough to trigger the decision on the merit substantial invocation standard, and also that the prejudice is obvious in that scenario. Did not get into any dollars and cents discussion, but it simply said that it's obvious. My opponent said in their response letter that that was contrary to the key trade decision. Briefly, the key trade decision explicitly says, assuming arguendo that a single motion to dismiss was not enough, I'm sorry, is enough, here it was filed concurrently with a motion to compel the alternative. Again, that is not the situation before the court. Did you offer up any affidavit or anything to support how much time you had spent on the case? We had not, your honor. This was an expedited briefing at the request of the district court, under this court's precedent, which had repeatedly held that no such affidavits were necessary. I think, as everyone agrees, the record is clear as to what litigation activity did occur, and courts have noticed, I believe... So you're telling me you thought about it, but you determined that you just didn't need to do it. I personally was not involved in the trial court, so I don't know what anyone thought about it. But the court's precedent was clear, saying that wasn't necessary, and I believe the First Circuit in the Joe Garroka case explained that courts can infer, when there's a case, that someone did it. So you submitted nothing on time, how much time had been spent on it? No, your honor. Did you submit anything on expenses that had been paid? Simply citing to the record what litigation activities occurred. That was enlisted, each item was listed in the district court. And I believe, you know, one technology in there rephrases the issue of fair notice, and whether the fair notice doctrine would apply in this case, I don't think the court is responsible for their strategic choice, but I think there wasn't fair notice from the Fifth Circuit that affidavits are required, so fair notice would require that. And certainly, if the court found that issue to be dispositive, you know, a remand, my client certainly could submit the time record showing that X number of hours were spent on a motion to dismiss, X amount of hours were spent on discovery requests, but I don't believe that's disputed, that those activities occurred, and that hours were expended, so it seems to be unnecessary. I saved some time for rebuttal. Any other questions? Thank you. Thank you, counsel. May it please the court, when the party who bears the burden of proof on an issue does not put in any evidence on that issue, doesn't submit any actual proof, it can't be clear for a district court to say, you didn't carry your burden on this issue. That's all Judge Lindsay did, and that finding was well supported. The appellant's argument that Judge Lindsay made any conclusions of law in deciding the prejudice issue, or made any errors of law, is not borne out by the record. How can anyone involved in the legal process think that there's no expense involved in as we explained in our brief, there is no marginal expense for each extra hour of work by the attorney. So that's one way a person could... That's not what the district court said. I mean, the district court didn't say this because this is a contingency fee case. No, and we're not... Do you have any authority that says the time involved in drafting legal pleadings doesn't matter if it's a contingency case? Not at all, and we're not here to suggest that Ms. Forby never could have proved that she suffered some kind of time prejudice, for example. Our only point is, she did not. I think the Marant case, or Marant, however you say it, is a good example. In that case, the lead attorney in the district court put together an affidavit, and he said, okay, we had to oppose five motions. Here's how many hours we spent on each motion. It was over 1,000 total, and here's the fees we incurred. It was about $266,000. Submitted that affidavit to the district court. Judge Means found prejudice on the basis of that evidence. Ms. Forby, I think, could have done something similar and said, here's the time we spent on this, responding to this motion to dismiss. Here's the portion of it we spent in Texas as opposed to what we did in Illinois, which everyone agrees doesn't count toward waiver, and here's why we're hurt by that. Maybe it's because we don't think this is going to be useful later in the arbitration, although that's a tough argument for her given that she's saying she briefed what she believes is the central issue in the whole case. Counselor, setting that issue aside, without question, it's obvious to anyone that responding to the motion, at a minimum, exposed a legal strategy that would be employed by Ms. Forby. In addition, there was the issue of delay, I mean, over approximately a year. To the exposure of the legal strategy that may be employed, why doesn't that constitute prejudice? Two reasons. I'll take those points in turn, Judge Bennett. There was no exposure of her strategy. There's an express finding from Judge Lindsey on that point, page 551 of the record, where he said, this isn't a case where you had to get into your evidence or tell us your sophisticated legal arguments. You cited a few cases, you pointed to some facts in your complaint, and you said that our authorities were distinguishable. That, by itself, does not tip her hand on any high-level strategy, especially when we consider the fact that she made the same arguments, cited many of the same cases in the brief she filed in Illinois. Judge Lindsey also found that that allegation that she had tipped her hand was conclusory, and I think that finding is very well supported because the question that we can't answer on this record is, what did she disclose? What is it that One Technologies knows now that we didn't know before she filed her motion? There's no answer to that question in the record. Without a clear answer to that question, Judge Lindsey's finding of the contrary is not clearly erroneous. On the delay point, Judge Lindsey correctly applied this court's precedent that delay itself is not inherently prejudicial. It is the content of the delay that matters, not its length. So what kinds of things... Is the reason for the delay wholly irrelevant? It is, Judge Graves. I believe it's footnote five, or I'm sorry, it's the Walker case, where the court says the defendant's motive for moving to compel arbitration is irrelevant. Waiver is an objective inquiry. If you have the right to arbitration, you can assert it. If you don't, you can't. But your reasons for doing it, and in that case, Judge King said, even if your reason is delay, which ours was not, even if that is your reason, it doesn't matter to the waiver analysis. On the delay front, I think the most important set of facts is that there's nothing that happened during that period of delay that caused prejudice. A couple of examples... Well, hold on. Counsel for Ms. Forby said that when the case was transferred from Illinois to Texas, there was a representation made that the reason it was being transferred to Texas was to seek arbitration, and that they didn't oppose that. So is that correct? No. The motion to transfer in Illinois was filed for the express purpose of compelling arbitration. Correct. She did not oppose the request we made for an extension of time to answer the complaint, and there was no representation in that motion that we were going to compel arbitration. We just said, we need some time to work on our strategy. That was all. Here's some things that have happened in other cases that have made... And so the strategy ends up being, let's take our chances in federal court in Dallas, see if we can get it thrown out. Rule 12 dismissal is probably the best thing a client can get in a lawsuit. And then, lo and behold, that partly worked on one claim, but it doesn't work on the big part of the case. And you get to take the judge's temperature. So why isn't that prejudice, this second bite at the apple, especially when I understand there's a lot of 12b-6 motions that are, you know, oh, it's not specific enough under Twombly, there's some technical element that wasn't pled. But here, it was teeing up the question of was this website fraudulent. That is the issue. Why isn't being able to take the judge's temperature on that, find out you don't like what the temperature is, and then go to a second forum? Why isn't that prejudice? I think that's the most important intuition that is driving cases like Marant that find a waiver of arbitration. And I want to submit that intuition is unfounded here. And for a few reasons. She's given us kind of three flavors of this second bite at the apple. One is that this is the only one she presented to the district court. What if I have to re-litigate the motion to dismiss? Well, she won't. We stipulated that we wouldn't file it again. And I want to, this is a point that's not in our brief, that stipulation was probably unnecessary because Judge Lindsay entered judgment. We would be issue precluded from re-litigating anything that was decided. Okay, so you're not going to file a dismissal. But the arbitrator is ultimately going to have to decide really the same question teed up in the Rule 12, which is, is the website fraudulent or legit? It is definitely not the same question, and here's why. In the motion to dismiss, on the face of the pleadings, we asked Judge Lindsay to rule as a matter of law that no reasonable consumer could possibly be deceived by our website. Not just on the pleadings. You submitted the website printouts. Correct, which was incorporated into her complaint. She described the website. We put in pictures. It's one and the same. In the arbitration, we will ask the arbitrator, as a matter of fact, to weigh the evidence and find, as a matter of fact, not as a matter of law, that Ms. Forby, individually, was not actually deceived by our website. That's a different issue than the one we litigated in front of Judge Lindsay, and we will put in very different evidence. We will put in evidence that she understood the nature of the charge, that she repeatedly used the credit monitoring services that she signed up for, and that she affirmatively ratified her decision to pay for those services after she signed up for them initially. You're not going to take the position in the arbitration that even if she thought that she was going to get all this for free, that that wasn't reasonable in light of the disclosures? That, we could, I think, present that argument on summary judgment similar to how there is some parallel between a summary judgment motion and a 12B6 in federal court. It's still not the same issue to say, you know, we can spot you every fact in your complaint, and you don't state a claim. Judge Lindsay rejected that argument. We then can go to summary judgment and say, based on the evidence that's been developed in this case, there's no finder of fact could conclude based on the evidence that this website was deceptive. It is a different issue, different procedural posture, different burdens, different kinds of evidence. And the last point, I think... I'm going to move quickly past Judge Costa raised. As a result of the 12B6, there was, in fact, a partial dismissal. And why doesn't that constitute prejudice in that the court actually provided relief that you were seeking? There is no prejudice to Ms. Forby from losing something she never really had. Again, this is not a complaint or a claim where we said you haven't pleaded enough facts. This is a claim that does not exist under the law. It's like she had brought a First Amendment claim against us, or a Section 1983 claim against a federal officer. Those claims aren't real. So what's the standard? How frivolous does it have to be to not count for prejudice? You're basically saying it was frivolous. Where do we draw the line? It lost versus it was wholly baseless. We're not saying it's frivolous. There's no rule of allegation here. It's meritless and barred by law. And it's a spectrum. There are gradations of how frivolous is it, how meritless is it, is it pleading-based? And that kind of determination is committed to the district judge in the first instance. Judge Lindsay found there was no prejudice to her from the loss of that claim. And she cannot and has not explained why that finding was wrong. There were two sentences on this in her opening brief. She said, well, maybe the arbitrator would have made a different decision. And maybe it would have been useful to me somehow to have that claim. She had a footnote on this below. Right. Well, there's a footnote that cites some Illinois cases. But have any of our cases said there's no prejudice when a claim is dismissed because it was so weak or not based on the law, as you say? I don't think this court has decided a case that says that. We cited, I think, a District of Kansas case that was affirmed by the Tenth Circuit. That was a habeas case, but the same principles apply. And I think the reasoning of that case is very well supported, that if she's going to go to arbitration and spend a bunch of time pursuing a meritless claim, how is she worse off by not doing that? She didn't appeal the dismissal of the unjustified charge. But the waiver asks a separate question. Have you invoked the judicial process? Obviously, you did by getting before the judge the question of whether or not that claim was removed and proceed. Secondly, was she prejudiced? Obviously, she lost something. And if you go to the other side of the equation, your client gained something by having that claim removed from the case. So the judicial process was invoked, and there was a change of status that either benefited or prejudiced someone as a result. How is it that that's not a classic waiver on its face? So I'll answer that question just quickly. We certainly don't concede that the judicial process was invoked, and I'll speak about that for a few minutes if that's helpful to the court. The reason Judge Lindsey found she's not prejudiced by the loss of this claim is that she didn't lose anything. It's an illusory claim. When there's a binding contract between the parties under Illinois law, you cannot sue an unjust enrichment. That claim was not there for her. She did not lose anything she ever really had. That was the core of the finding below, and that finding is not clear error. If you'd won everything in front of Judge Lindsey, I know it wouldn't be, but wouldn't you be saying the same thing with the fraud? I mean, any time something's dismissed for failing to state a claim as a matter of law, you'd be saying, well, you never had it to begin with. I think it is, as this Court said in Morant, we can draw distinctions between 12B6 motions. They're not homogeneous. You know, the motion there that alleged an affirmative defense, we concede you have a claim, but we're going to confess and avoid. That's a different analysis. Ours was more of like a Conley v. Gibson type motion. There's no set of facts you can prove to win this claim. I think there's a difference between that and a Twombly and Iqbal type motion of you just didn't plead enough to do it. So those are the kinds of case-specific determinations that district judges are best positioned to make. The parties are in front of them. They're familiar with the litigation. They've seen how they're affected, and the finding that she has not challenged on appeal is his finding that her allegations were too conclusory for him to find prejudice. All she put in in the district court was a footnote on this, and he said, I'm sorry, that's not enough. It would be inconsistent with this court's clear error case law to say we're going to flip a district judge based on an unsupported footnote. And that's why I'm confused, because you continually talk about what Judge Lindsay determined, what Judge Lindsay found, but then on the other hand, you're saying the judicial process wasn't invoked. How can it not be invoked if Judge Lindsay is making all these findings and determinations? On the substantial invocation of the judicial process, filing a purely defensive 12B6 motion has never before been treated as a substantial invocation of the judicial process. And the central problem I wanted to put before the court today is... Well, let me ask that the other way. What's your best case that a merits-based motion, which Rule 12B6 is a merits-based motion, that filing a merits-based motion is not an invocation of the judicial process, not counting the cases where that was sought along with a pending arbitration request? What's your best case? So I think there are three that I would say in this order. Pacheco is an unpublished case where the defendant filed two 12B6 motions before it filed its motion to compel arbitration. The second one is the general guarantee case from 1970 where the defendant said, we're going to move to compel arbitration, and in the case, we're going to move to arbitration for dismissal and summary judgment. And court, just to be clear, we prefer judicial dismissal. We are moving to arbitrate as a backup. Our first choice is judicial resolution. And then finally is the key trade case that counsel was discussing where the fact that the motion to compel was filed simultaneously was not necessary to the court's decision. Judge Engelhardt had said that is a motion from a defensive posture. I'm sorry, Judge Clement said that. That is not a substantial invocation of the judicial process, full stop. They went on to consider the motion, but it wasn't necessary to that original holding. And that, I think, gets to the problem that Miss Forby has created for this court, which is we've got this body of cases, those three that I cited, the steel warehouse case, a lot of defensive motion. Pacheco had a request for arbitration, too, at least before the waiver decision was made. That's correct, but after the first two 12B6s were filed. And we've got these cases that say a defendant can't seek a decision on the merits. I think there's four of those. And then we've got four cases that say a defendant doesn't substantially invoke by filing a 12B6 or a summary judgment motion. Her reading of those cases about seeking a decision on the merits makes the four cases we just discussed, key trade, Pacheco, steel warehouse, and general guarantee, those cases become wrong. They're inconsistent with the test she's asking this court to adopt. The test that we put forward harmonizes all of those cases and says, what does this court mean when it says seeking a decision on the disputed fact? That's how it was used in the Miller brewing case for the first time, where the plaintiff had taken a bunch of merits discovery. In the petroleum pipe case, it was an informal request, but this court found it was a request for judgment on a counterclaim that the defendant had put forward. Morant, it was an affirmative defense where they pleaded their own facts, and the same was true in the Hampton case earlier this year. So if we take that more limited view of seeking a decision on the merits, there's no inconsistency in this court's cases. She has asked this court to adopt a test that every motion that seeks dismissal with prejudice automatically substantially invokes the judicial process. And then here today, she's gone further and said, actually, you automatically waive because no matter what happens on that motion, there's prejudice. If we get a claim dismissed, well, we lost it. That's prejudice. If the motion is denied, you've got to take the judge's temperature. That's prejudice. So it's a very extreme position that she's asking this court to adopt. Any motion, 12B6, automatic waiver. This court has rejected that kind of right-line rule in Morant. I think it would lead to absurd results. A motion for dismissal for want of prosecution results in a dismissal with prejudice. Are we going to say that moving to dismiss for want of prosecution is a substantial indication? But it seems to me Morant does make this, have this perfunctory language that it's getting from some prior cases. And this isn't a, the motion you filed wasn't, oh, you forgot to allege some element or, you know, we don't know exactly what you're talking about. It's not clear enough. I mean, it's, the reasonable person would have misunderstood. That's a, to me, that's a core merits ruling. It was a perfunctory motion in the sense that the Price case used the term perfunctory, which is where Morant took it from, that a motion to dismiss filed before discovery is perfunctory. Dismissal motions and summary judgment motions after discovery are not. So in the original sense of the term, this was a perfunctory motion. We've explained in our brief why we don't think that's an especially helpful distinction, but I think we fit within it as it was originally articulated. For me, this is one of the more important cases because I deal at the trial court level with folks who come in who have the right to compel arbitration, but then they sit on that right as, you can call it exploring the trial judge's temperature, or that there is a significant delay before they invoke that process. So let's, on the latter part, how long can you wait before you stand up and say, we deserve to go to arbitration, and you seek the trial court to do that? In this case, it's approximately a year. So what's the cutoff? I think the cutoff depends on how much you do and not how long you wait. So even though there was a year delay. So the fact that delay has been used as a description of part of waiver, you're saying that delay really doesn't matter if nothing's going on. Yeah, I think that's right, because what this court's cases have said is delay matters because it opens up the possibility for things like discovery, where you incur a bunch of expense and maybe you learn things about your opponent's case that you wouldn't learn in arbitration. That's prejudicial. In Marant, they had moved to stay discovery, and that prevented the plaintiff from deposing a key witness, and that was prejudicial to them. Delay kind of, it's a means to an end. It's not prejudicial in and of itself. It's certainly relevant to the calculus, but here, we transferred the case to move, ask for an unopposed ministerial extension motion, file a single motion to dismiss. The next thing we did was move to compel arbitration. In cases where this court has found substantial indication and found prejudice, there's a much more extensive course of conduct where you're demanding a jury, you're moving to transfer within judicial forums, you're participating in discovery. Wasn't there also a motion to stay discovery? That was in Illinois, and that was for the express purpose of allowing a decision on the motion to transfer before we got into any discovery. We cannot consider the fact that a motion to stay discovery was filed as part of invoking the judicial process? No, Your Honor. She's admitted that the Illinois activities are relevant to the waiver analysis, and under the Valero case and the Sharp case, which we cited in a footnote early in our brief, when you're using the judicial process to further your right to arbitrate, that's not substantial indication. So everything we did in Illinois designed to get the case to Texas, all of that is not substantial indication. On the prejudice point, I wanted to close just with a couple of reminders or just points I wanted to highlight here today. One is that this court has never before reversed a district court's finding of lack of prejudice in the waiver of arbitration context. And the reason for that, as Judge Bennett has referenced earlier, the district court is closer to the parties, observes the conduct, knows the case a little better, and is better situated to make that decision in the first instance. I'd also like to commend the court to the Walker case, where this court reversed a district court's finding of prejudice as clearly erroneous, where it said a plaintiff's generalized protestations about the cost of delay are insufficient to overcome the strong federal policy in favor of arbitration. The same is true here. We'd ask the court to affirm Judge Lindsay's finding of the same. Thank you. Rebuttal. Thank you, Your Honors. One factual clarification, there were two motions to stay discovery in this case, one in Illinois, one here in Texas. The one in Texas was filed after the court had ordered a 26-F conference and they decided, oh, wait, now we're going to move to compel. So that motion to stay, which was filed here in Texas, I believe does count for the prejudice inquiry. They filed it simultaneously with the motion to compel. I believe it was right after. I'm not 100% sure, but it was around the same time. In fact, the only hearing the court held on the motion addressing the issue of waiver was actually on the motion to stay discovery, and it was before the motion to compel was briefed. It was an expedited motion. This issue of all these other cases being inconsistent, I don't think they are. As Judge Costa asked in the question, which of these cases where there was not a in the alternative motion to compel arbitration, and my opponent then responded with cases where there was a motion to compel arbitration. So I think those cases are easily distinct. Well, he says Key Trade had that but didn't turn on that. What do you say to that? I think that's not what Key Trade said, and I direct the court to the case. It explicitly said that, and then actually in the Murant case, which came after that, this court addressed that and said that that was the key feature of Key Trade. So Murant believes Key Trade decided that, so I would suggest the court follow their lead. On this question of what does one technology know now that it didn't, it knows Judge Lindsay's temperature on this case, and I think that alone, yes, is enough. This suggestion that that's an impermissible bright line, the problem is it would be a bright line the other way, that a 12b6 motion never is substantial invocation of judicial process if you're not prejudiced when you lose a claim and you're not prejudiced when you don't lose a claim. So if you're not prejudiced with either of those things and you're never prejudiced, what else could come out of a 12b6 motion? And indeed, in the Miller-Brewing case, the court says that substantially invoking the litigation machinery is the essence of waiver. And so if that creates a strong finding that when there is a substantial invocation of the judicial process there will be likely a finding of prejudice, I think that's understandable. And I think there's a reason why this court has never found a case where there's been a substantial invocation of judicial forum but not a finding of prejudice. So I think that that's instructive and why we think that the two overlap. I think that there's – What do you – on substantial invocation, what's your best case? What case is most like this that supports your view on that and Judge Lindsey's view on that issue? I think there's the case that's almost exactly the same as from the Eighth Circuit, the Hooper case. On both issues, it was a consumer class action where the 12b6 motion was granted in part, denied in part, and the prejudice was solely based on – What about from our court? I think the best case in that case is the petroleum pipe case where it was actually less in that there was no formal motion filed and there was no formal finding. The prejudice and invocation was based solely on a status conference and an informal discussion before the judge. And I think if that's enough, then certainly a motion to dismiss with a decision is enough. And I think Merrant itself, also, the motions to dismiss there were – even though there were more dollars expended because there was – it was a substantially more complicated case with – Invocation, what was done, actually, of judicial process was the same. I think – and one last point I'd like to make is on this issue of the second bite of the apple and the questions not being exactly the same. I think the second bite of the apple, they'll never be the exact same question because there'll always be some fight of – that would be issue preclusion or something of that nature. But the question is whether, as Judge Costa, you noted, it goes to the heart of the matter. And the fact that it's not the same procedural posture, particularly since arbitration is inherently different procedural postures than in court, doesn't mean it's not a second bite of the apple. And if there are no further questions, I'll submit my case. Thank you. All right. Thank you, counsel. The court will take this matter under revised.